Ord. Per.          Wolfe *vs.* Covington and Lexington Railroad.

Case 42.                    APPEAL FROM KENTON CIRCUIT.

1. The city authorities of the city of Covington have authority to re-
grade a street for any public purpose, without incurring any re-
sponsibility to holders of lots adjacent to the street, (*Keasey vs. The
City of Louisville,* 4 *Dana,* 154,) though the street may be raised
several feet above the level of the lot. So the city authorities
may authorize the passage of a railroad through a city, as consist-
ent with the purposes of public streets, (*Applegate vs. Lexington &
Ohio Railroad Company,* 8 *Dana,* 289,) and it is not a *purpresture.*

2. The city authorities of Covington had authority to change the grade
of a street to suit the grade of a railroad coming into the city—or
authorize the railroad company to do so—not perhaps throwing the
expense of the grading upon the adjacent lot owners.

3. As to the claim for private damages sustained by an individual in
such case, where the jury find the plaintiff, as a member of the
city council, advocated and voted for the location of the road as
now complained of, and it is proved that he had other property on
the same street, &c., and said that its location there would be
worth $1,000, that it in fact increased the value of his property on
that street, and of this particular lot as a place of business, though
not as a residence. Held—that he could not recover, and the Cir-
cuit Court was right in so instructing the jury upon the principle
*volenti non fit injuria.*

Case stated.

The appellant brought this suit against the Rail-
road Company, to recover damages for an alleged
injury to his real property in Covington, by running
the railroad along Washington street, on which his
property was situated, thereby destroying the grade
of the street and injuring his shade trees, and com-
pelling plaintiff to incur great expense to make his
property in a tenantable condition. The company
answered the petition, and rely that the plaintiff pe-
titioned the company to run the road as it was run in
front of plaintiff's lot.

The plaintiff proved the material facts stated in
his petition as ground of recovery. The defendants
exhibited the ordinances of the city of Covington
authorizing the location of a depot in a certain lo-
cality, which embraces Washington street, on which  ·

plaintiff's property is situated, and that the company had selected a particular place, to which the city council had assented, and had given express authority to locate the road in that street, and that the grade of the road should be the grade of the street, not however to render the city liable for any damage t he company might do in grading the street.

*S. M. Moore*, for appellant—

Argued—1. That though the plaintiff may have other property in Covington which may be benefited by the location of the road, yet so far as this property is concerned he is entitled to damages. He owns this his residence, subject to all surrounding circumstances, and independent of his other property.

In the case of *Meacham vs. Fitchburgh Railroad Co.* 4 *Cush.* 291, it is said: "It would operate with great inequality to hold that where there are various individuals, each owning large trading or manufacturing establishments in the immediate vicinity of a railroad, but without being adjoining or connected with the located limits of such road, one of whom is owner of a parcel of land situated in another part of the town over which the railroad is actually located, that as to the latter he is by way of reduction of damages for his land thus taken to be charged for all the incidental benefits which he may receive from the location of the railroad in the vicinity of his other land and establishment; while his neighbor, who is equally benefited, is exempt from any contribution to this object." Again, if the plaintiff even prove the consent of defendant that the railroad might run in the street in front of his premises, that cannot raise the presumption, that he knew, or could have known what they would be.

In the case of *Commonwealth of Massachusetts, in Boston and Maine Railroad*, 3 *Cush. Rep.* 25, it appears that the commonwealth chartered and incorporated the defendant as a body politic, and by the charter, and by the governor and his council, permission was

Wolfe
vs.
Cov. &. Lex.
Railroad.

given to the defendant to run the road through certain lands which were vested in the commonwealth. In that case the Supreme Court of Massachusetts, after elaborating the doctrine, decided "that it was not the intention of the Legislature by such an act to grant the land of the commonwealth, or any easement therein, to the corporation without any compensation."

The courts of this country generally lay it down, that a party consenting that a road may run through his land cannot recover pay for the land; but they have not said, or laid it down as a rule, that such party may not recover for the damage done to his residence, his well, or premises. (*Lex. Railroad Co. vs. Applegate, &c.* 8 *Dana*, 295; *Parker vs. Boston and Maine Railroad,* 3 *Cushing,* 107.) It cannot be the law that the consent of the plaintiff that the road might run in front of his house deprives him of any right to recover for the injury to his trees; and the court erred in so instructing the jury.

2. But if the ruling of the court was thus far right, still the court should have granted a new trial, because the verdict is obviously against the evidence. Take from the testimony the conduct of the plaintiff as a member of the council, and there is nothing in the record that manifests such consent as is contemplated by the law. It will not do to say that Stuart proves such a consent; there is not the slightest circumstance to corroborate his statement in the other evidence of defendant. The defendant introduce Wolfe and he denies it. Lamdrum, Martin, and Colbert all fail to prove it. Stuart's testimony alone cannot sustain the verdict.

*Benton & Kincaid*, for appellees—

Washington street is a public street in the city of Covington. Appellant's property lies on that street. He had other property in the vicinity. It is clear from the facts proved that it was very much through the influence of plaintiff that the road was brought

through that street, and the depot placed there. That not only as a citizen and councilman, but as an individual, he was most earnest in getting the road there. The city council designated that as the place, and Wolfe was triumphing in the success of the party which succeeded in getting it there. It is most manifest that it was located there by his consent.

No damage has been done to plaintiff's property but what ensued from the work which the company had authority to do. Surely if plaintiff consented for the road to pass there, he cannot demand compensation for any injury necessarily arising from the use of the privilege which he had given. He should have looked to the probable grading which would be necessary to make the road answer the purposes of the grant, and not postpone it until he had received the benefit of the location, and then claim damages.

The property is not injured in value; as business property it will be enhanced in value. Wolfe thought it would be enhanced in value, and that his other property would also be enhanced in value. The question where the road should come into the city was much spoken of, and much excitement about it. Plaintiff was most active in procuring its present location. Through his influence and that of others it was carried in the council. He now cannot complain. An affirmance is asked for.

Chief Justice MARSHALL delivered the opinion of the Court— January 24.

This action was brought by Wolfe, against the Covington and Lexington Railroad Company, to recover damages against them for constructing and laying their railroad in front of his house and lot on Washington street, in the city of Covington, and for so lowering the grade of said street in front of his lot as that in consequence thereof he lost several young maple trees which he had planted on the sidewalk, and had been compelled at great expense to build stone walls along the sides of his lot to preserve

WOLFF
vs.
Cov. & Lex.
Railroad.

them, and to place steps necessary for convenient ingress and egress, and to incur other expenses pointed out in the petition.

The defendants in answer relied upon authority from the city council of Covington to locate their road along Washington street, and to make it of a suitable grade, and also upon the consent of the plaintiff to its location in that street. And they say they re-McAdamized the street in front of plaintiff's lot, and that the lot being low was rendered more valuable by lowering the street.

The plaintiff proved the material facts alleged in his petition as grounds of damage. And the defendants proved by the ordinances of the city that they were authorized to locate their depot in said city within certain prescribed limits, shown to include Washington street; and that after having selected a place on that street for its location, the council approved of it, and gave special authority to locate the road in that street, and declared, in the ordinance, "that the grade of the road be the grade of said street, provided nothing herein shall be construed to make the city liable for any damages said company shall do in grading said road," which we regard as an express authority to change the grade of the street so far as might be necessary to make it correspond with the grade of the road.

1. The city authorities of the city of Covington have authority to re-grade a street for any public purpose, without incurring any responsibility to holders of lots adjacent to the street, (Keasey vs. The city of Louisville, 4 Dana, 154,) tho' the street may be raised several feet above

In the case of Keasey vs. the city of Louisville, 4 Dana, 154, this court recognized the right of the city authorities to re-grade a street for any public purpose, after it had been once graded and McAdamized, and decided that the city was not responsible for the inconvenience occasioned to the plaintiff by such re-grading, although it raised the street several feet above the level of his lot, and although his house had been built to suit the original grade, and that as there had been no trespass or nuisance, nor invasion of any peculiar right of property of the plaintiff, there was no cause of action against the city. Of course there could have been none against her agents

by whom the re-grading was done, if they did not exceed the rights and authority of the city. The case of *Applegate vs. the Lexington and Ohio Railroad Company,* 8 *Dana,* 289, recognizes a railroad within a city as entirely consistent with the purposes for which a street may be properly used, and decides that when authorized by the municipal power it is not a *purpresture* or encroachment upon the public property or rights.

From the principles established by these cases, it seems to follow that the city council of Covington not only had power to change the grade of Washington street, but that it might do this if necessary for the purpose of making it correspond with the grade of the railroad, if the road had stopped at the end of the street and so far above or below it as to prevent convenient access. And although it might have been improper, perhaps inadmissible, for the city to incur or to throw upon the adjacent lot owners the expense of re-grading, for the mere purpose of making a way for the road, yet as the introduction of the road into the city was evidently regarded as a public benefit or advantage to the city, and must upon general considerations be presumed to have been advantageous in fact, and as it comes within the public purposes for which streets are made and used, we are of opinion that the council had power not only to authorize the introduction of the road into the city, and the use of the street for its purposes, under such restrictions as prudence might dictate, but also to authorize the company to change the grade so as to suit the passage of this road, but at their own expense, and on their own responsibility. Such as we suppose is the import of the ordinances on the subject. And there is no complaint as to the expense of re-grading, or as to the condition in which the company have placed or left the street.

The question, however, recurs upon the claim for private damages sustained by the plaintiff. The evidence authorizes the jury to find not only that the

---

WOLFE
*vs.*
COV. & LEX.
RAILROAD.

the level of the lots. So the city authorities may authorize the passage of a railroad through a city, as consistent with the purposes of public streets, (*Applegate vs. Lex. & Ohio Railroad Company,* 8 *Dana,* 289,) and it is not a *purpresture.*

2. The city authorities of Covington had authority to change the grade of a street to suit the grade of a railroad coming into the city—or authorize the railroad company to do so—not perhaps throwing the expense of the grading upon the adjacent lot owners.

plaintiff, as a member of the city council, as he says in obedience to the wishes of his constituents, advocated and voted for the location of the road in Washington street, but also that he advocated it in a speech before the directors of the railroad company; that in the contest between different neighborhoods whether it should be in Washington or another street, he advocated its location in Washington street, on which he had other property besides the lot now in question; that he said its location there would be worth $1,000 to him; that it has in fact increased the value of property on that street, and enhanced the value of this particular lot as a place of business, though it has reduced its value as a residence, for which, on account of its being shallow, or running back but a short distance, it was not very desirable.

3. As to the claim for private damages sustained by an individual in such case, where the jury find the plaintiff, as a member of the city council, advocated and voted for the location of the road as now complained of, and it is proved he had other property on the same street, &c., and said its location there would be worth $1,000, that it in fact increased the value of his property on that street and of this particular lot as a place of business, tho' not as a residence. Held—that he could not recover, and the Circuit Court was right in so instructing the jury upon the principle *volenti non fit injuria.*

Upon this evidence the court properly refused to instruct the jury that they must find for the plaintiff the damages actually sustained by placing the road in the street in front of his residence and by lowering the grade. And properly gave an instruction to the effect that if the plaintiff consented to the location of the road where it was located, he was not entitled to a verdict, but that his action in the city council was not alone sufficient to prove his consent. The case having been placed before the jury upon the precise question of consent, their verdict against the plaintiff being authorized by the evidence, establishes the fact that he did consent as an individual, and as the consent to the location of the road in the street necessarily implies a consent to such re-grading of it as was necessary to make it suitable for a roadway, a question to be decided by the company, we think his consent to the location in Washington street deprived him of the right to claim damages incident to that location according to the maxim, which is founded in justice as well as in law, *"volenti non fit injuria."*

Wherefore, the judgment is affirmed.