# THE SAN FRANCISCO, ALAMEDA, AND STOCKTON RAILROAD COMPANY *v.* ANDREW CALDWELL *et als.*

CONSTITUTIONALITY OF THIRTEENTH SECTION OF RAILROAD ACT.—The thirteenth section of the Railroad Act, requiring Commissioners, in assessing the value of lands sought to be taken by the company, to make allowance for any benefit that will accrue to the person whose lands are taken, is not repugnant to the Constitution.

PRIVATE PROPERTY MAY BE TAKEN FOR RAILROADS.—Railroads for the carriage of passengers and transportation of merchandise are public highways, for the construction of which, though made by private corporations, the land belonging to private persons may be taken upon paying to the owner a just compensation.

LEGISLATIVE POWER IN TAKING LAND FOR PUBLIC USE.—It is in the power of the Legislature to declare that in ascertaining what is a just compensation to be paid to the owner of land taken for a railroad, the benefit which may result to the remaining land of the same parcel shall be set off in satisfaction or part satisfaction of the value of the particular land taken.

COMPENSATION FOR LAND TAKEN FOR PUBLIC USE.—The Constitution guarantees to the owner of land taken for public purposes only a just compensation, and to give a just compensation, not only the benefit which may result to the remaining land of the parcel taken, but also the injury which this remaining parcel may sustain, should be taken into consideration.

JUST COMPENSATION FOR LAND TAKEN FOR PUBLIC USE.—When the land taken for a railroad is a part only of a tract, it is the duty of the Commissioners, in arriving at a just compensation to be paid to the owner, to ascertain what is the

value of the whole tract without the railroad, and also what will be the value of the part not taken after the road is constructed, and the difference in values is the true compensation to be awarded.

THE case came up from the County of Alameda.

The other facts are stated in the opinion of the Court.

*A. M. Crane*, for Appellant.   The question raised by the bill of exceptions is this, viz: In the assessment of damages for land taken for the construction of a railroad, are the Commissioners bound to take into consideration and make allowance in assessing such damages for any benefits accruing to the claimants by reason of the construction of the road ?   The Court below determined this proposition in the negative. The last clause of section eight of Article I of the Constitution of this State is as follows: " Nor shall private property be taken for public use without just compensation."   The " just compensation " here specified may as well be made by the advantages and benefits conferred by a public work as in money, as there is nothing in the Constitution requiring it to be paid in money ; and such is the law as recognized by this Court in *San Francisco and San José Railroad Company* v. *Mahoney*, 29 Cal. 112.   To the same effect are the following cases : *Betts* v. *The City of Williamsburg*, 15 Barb. 255 ; *The Mayor, etc., of New York* v. *Livingston*, 8 Wen. 85 ; *Matter of Furman Street*, 17 Wen. 649.   It is not deemed either necessary or proper to argue at length the constitutional question made, as that would be merely, literally or in substance, to repeat the opinions of the Court in the New York cases before referred to.

*N. Hamilton*, for Respondents.   The respondents were entitled to the full value of the land taken, irrespective of any benefits.   (2 Kent, 8th Ed. 400 ; *Jacob* v. *City of Louisville*, 9 Dana, 114 ; *Rice* v. *Turnpike Co.*, 7 Dana, 81 ; *Giesy* v. *Wil. and Z. R. R.*, 4 Ohio St. R. 308 ; *Lit. Miami R. R.* v. *Collett*, 6 Ohio St. R. 182 ; *Milwaukee and Miss. R. R.* v. *Elbe*, 4 Chandler, 72 ; *State* v. *Miller*, 3 Zab. 383 ; *Pet. White Mt.*

*Road Co.*, N. H. Law Rep. 1857 ; *Cushman* v. *Smith*, 34 Maine, 247.)    Respondents also contend that the benefits contemplated by that section, if to offset value of land taken, are such special benefits as accrue to the particular piece or tract of land through which the road runs, and are only such benefits as reclaiming low, marshy land by ditching, and possibly, the erection of depots thereon ; and in estimating the same, the Commissioners should look to the length of the road through *the tract*, and the question should be : How does this *piece of road* affect this *piece of land?*    Because they could with certainty estimate the cost of ditching, etc., but not such general benefits as inure to the whole community by reason of the construction of a railroad from one important point to another.


By the Court, CURREY, C. J. :

Appeal from the judgment of the District Court of the Third Judicial District confirming the assessment of damages for lands taken for the construction of the railroad of said company.

The railroad company filed in the office of the Clerk of said District Court in and for the County of Alameda, in which county the lands proposed to be taken for the use of the company are situated, a petition containing therein the matters necessary to be stated as provided in the twenty-fourth section of the Railroad Act passed in 1861.    (Laws 1861, p. 619.) A time for hearing the petition was appointed and the owners of the land proposed to be condemned to the use of the road were duly notified thereof.    No objections were made by any of the owners of the lands described in the petition to their appropriation to the use of the company, and thereupon Commissioners were appointed to ascertain and assess the compensation to be paid for such lands.    The Commissioners proceeded to view the several tracts of land described, and heard the parties interested and the testimony and proof offered, and

47

made and filed their report containing an assessment of the compensation which they determined the company should pay to the respective owners of the land appropriated for the use of the railroad. With this report the land owners, who are the respondents in the case before us, seem to have been satisfied, but the railroad company, deeming itself aggrieved by the determination of the Commissioners, in due time excepted to the report and moved the Court to set it aside and award a new trial, on several grounds, one only of which is relied upon in this Court, which is that the Commissioners did not, in ascertaining and assessing the compensation to be paid to any of the land owners, take into consideration or make allowance for the benefits or advantages accruing to such persons by reason of the construction of the railroad as proposed by the company, notwithstanding the evidence produced authorized and required them to do so. The question thus raised by the railroad company was argued at the June term of the Court in 1865, and at the following October term the Court over-ruled the exceptions, and confirmed the report, and decided, as a matter of law, that the Commissioners had no right in ascertaining the compensation to be paid the respondents to take into consideration or make allowance for any benefits or advantages accruing to them or either of them by reason of the construction of the railroad of the company; and further, held and decided that the respondents were entitled to the full value of the land taken for the construction of said road, irrespective of any benefits or advantages which they may have derived therefrom; and the Court therefore declined to examine said report, or the evidence therein reported upon that question.

The railroad company excepted to this decision of the Court, and the appeal taken brings up the same for review.

The thirtieth section of the Railroad Act of 1861 declares it to be the duty of the Commissioners appointed to ascertain and assess the compensation for the lands sought to be appropriated, to be paid by the railroad company to the person or persons having or holding any right, title or interest therein,

to take into consideration and make allowance for any benefit or advantage that in their opinion will accrue to such person or persons by reason of the construction of the road as proposed. (See, also, Laws 1863, p. 613.)

If this statute is not invalid on the ground of repugnance to the constitutional rights of the owners of lands sought to be appropriated to the use of the railroad, which provides that private property shall not be taken for public use without just compensation, then we are at a loss to know on what ground the ruling of the Court was based or can be sustained. Whether the use of the property taken for the purposes of the railroad is a public use within the meaning of the Constitution, or the contrary, is involved in the question presented for consideration. But on this subject there is no room for controversy at this day, if respect is paid to the adjudications of the highest Courts of the land. Railroads are esteemed as public highways, constructed for the advantage of the public. " Railroads," said Mr. Justice Sutherland, in *Bloodgood* v. *Mohawk and Hudson Railroad Company*, 14 Wend. 57, " though made by private corporations, when designed for travelling and transportation, are great public improvements. They can be made profitable to the proprietors only by affording the most liberal accommodations to the public. They are, from their very nature, devoted and exclusively devoted to the public use, upon such terms and conditions as the Legislature in their wisdom think reasonable and proper in order to insure to the owners of the stock a reasonable remuneration for the hazard and expense incurred in their construction." The principles applicable to this subject are ably and elaborately considered in the arguments of counsel and in the opinion of Mr. Chancellor Walworth in the case of *Beeckman* v. *Saratoga and Schenectady Railroad Company*, 3 Paige, 45, 74. In the case here referred to, the Chancellor held that railroads for the conveyance of travellers or the transportation of merchandise from one part of the State to another were public improvements and for the public benefit, for the construction of which private property might be taken under the

authority of the Legislature, upon paying a just compensation therefor to the owners. That the eminent domain, or the right to resume the possession of private property for the public use, upon paying a just compensation therefor, remained in the Government, or the people in their sovereign capacity; and that such right of resumption might be exercised, not only for the public safety, but also when the interests or even the convenience of the State or of its inhabitants were concerned, as for the purpose of making turnpikes, railways, canals, ferries and bridges for the accommodation of the public. That it belonged to the legislative power of the State to determine whether the benefits which the public were to derive from such improvements were of sufficient importance to justify an exercise of the right of eminent domain, in thus interfering with the private rights of individuals, and that the right itself might be exercised by the Government through its immediate officers or agents, or directly through the medium of corporate bodies or private individuals. (*Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 13; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn. 294; *Cotrill* v. *Myrick*, 3 Fairfield, 222; *Dyer* v. *Tuscaloosa Bridge Co.*, 2 Porter, 296; *Harding* v. *Goodlett*, 3 Yerger, 41; *Swan* v. *Williams*, 2 Gibbs, 427; *Williams* v. *N. Y. Central Railroad*, 18 Barb. 246; *State* v. *Rives*, 5 Ired. 297; *N. Railway Co.* v. *C. & C. Railway*, 7 Foster, 183.)

The right of eminent domain is an attribute of sovereignty which is usually defined as the right to take and appropriate private property to public use whenever the public exigencies demand it. (Redfield on Railways, Ch. XI, Sec. 1.) We shall assume, for the purposes of this case, that the public exigencies required the taking and appropriation of the respondents' lands for the uses and purposes of the railroad company, as upon this question no doubt is suggested on the respondents' behalf. To this right of eminent domain the obligation on the part of the State or its representative to make just compensation for the lands so taken, is concomitant and inseparable. (*Bonaparte* v. *C. and A. R. Co.*, 1 Bald. C. C. 226; *Bloodgood* v. *M. and H. R. Co.*, 18 Wend. 9; *Brad-*

*shaw* v. *Rogers*, 20 John. 103; 2 Kent Com. 339 and notes.) But in ascertaining what is just compensation the question is presented, in the case before us, as to the power of the Legislature to declare and determine that benefits which may result to him whose property shall be taken, by the enhancement of the value of his remaining property, which is of the parcel of that taken, by reason of the construction of the railroad, shall be estimated and set off in satisfaction or in part satisfaction of the compensation to which he may be entitled for the particular property taken from him for the use of the public. The opinions of jurists on this subject are found, on examination, to be widely diverse from each other. On the one side it has been maintained that compensation to the extent of the value of the land taken must be made in all cases, without any deduction on account of any benefit or advantage which may accrue to other property of the owner, by reason of the public improvement for which the property is taken. (*Jacob* v. *The City of Louisville*, 9 Dana, 114; *Rice* v. *Turnpike Co.*, 7 Dana, 81; *Kensy* v. *Louisville*, 4 Dana, 154; *Woodfolk* v. *N. and C. Railway*, 2 Swan, 422; *Hatch* v. *R. R. Co.*, 25 Vt., 49; *Railway* v. *Legard*, 10 Lou. Ann. R. 150; *Giesy* v. *C. W. and Z. Railway*, 4 Ohio St. R. 308; *Little Miami Railway* v. *Collett*, 6 Ohio St. R. 182; *Cushman* v. *Smith*, 34 Maine, 247; *State* v. *Miller*, 3 N. J. 383.)

In support of this view it is argued that the enhancement of the value of other property of the owner of the land proposed to be condemned to public use, which may be of the parcel of that taken, is merely the measure of such owner's share in the general good produced by the public improvement; and why, it is asked, is not the owner in such case justly entitled to the increase in the value of the property thus fortuitously occasioned, without paying for it? His share in the benefits resulting may be larger than falls to the lot of others owning property in the same vicinity, and it may not be so large, and yet he alone is made to contribute to the improvement by a deduction from the compensation which is awarded him by sovereign behest as a pure matter of right,

though others whose property may adjoin the public work are equally with himself benefited by it. On the other side it is maintained that the public is only dealing with those whose property is necessarily taken for public use, and that if the property of such persons immediately connected with that taken, but which remains unappropriated, is enhanced in value by reason of the improvement then, thereby the owners receive a just compensation for the lands taken to the extent of such enhancement, and if thereby fully compensated they cannot in justice ask for anything more. (*People* v. *Mayor of Brooklyn*, 4 Coms. 419; *Livingston* v. *The Mayor of New York*, 8 Wend. 85; *Matter of Furman Street*, 17 Wend. 658; *Symonds* v. *Cincinnati*, 14 Ohio, 147; *Betts* v. *The City of Williamsburg*, 15 Barb. 256; *Rexford* v. *Knight*, 15 Barb. 627; *Com.* v. *Sessions of Middlesex*, 9 Mass. 388; *Ind. Central Railroad Co.* v. *Hunter*, 8 Ind. 75; *McIntyre* v. *The State*, 5 Blackf. 384; *Greenville and Columbia Railway* v. *Partlow*, 5 Rich. 428; *White* v. *C. and S. C. Railway Co.*, 6 Rich. 47; *Meacham* v. *Fishburg Railway*, 4 Cush. 291; *Upton* v. *S. R. B. Railway Co.*, 8 Cush. 600.)

The weight of authority appears to be in favor of allowing benefits and advantages to be considered in ascertaining what is a just compensation to be awarded in such cases, and it seems to us that the reasons in support of this view of the subject are unanswerable.

Just compensation requires a full indemnity and nothing more. When the value of the benefit is ascertained there can be no valid reason assigned against estimating it as a part of the compensation rendered for the particular property taken, as all the Constitution secures in such cases is a just compensation, which is all that the owner of property taken for public use can justly demand. The Constitution does not require the compensation in such cases to be rendered in money, though in the estimation of benefits their value must be measured by the money standard. (*Betts* v. *The City of Williamsburg*, 15 Barb. 256–259.)

What shall be the measure of compensation to the owner of

land taken for public use, is involved in considerable confusion
in the decisions of Courts on the subject. In the abstract, the
question is easily solved, by ascertaining the value of the land,
and the damage sustained by reason of taking it. The value
of the land taken may amount to the full compensation to
which the owner is entitled, as where it is all the land which
the owner has there, and he has nothing remaining to be
prejudicially affected; and on the other hand the mere value
of the land taken may not amount to a just compensation, as
for example, when it is only a part of a single tract and that
which remains adjacent is thereby rendered less valuable
intrinsically. The portions of a tract of land dissevered by a
railroad may not be as valuable thus divided as when con-
nected by the land occupied by the road, and generally is not.
Sometimes it happens that one of such portions is cut off from
streams or springs of water which is an element of value
affecting the tract in its entirety. Sometimes the two por-
tions are by the course of the road made into inconvenient
form and shape, as when the road passes through the tract
diagonally, or describing a curve. Sometimes excavations or
embankments must be made, and in all cases it is necessary to
build fences and maintain them. All these things and the like
are or may be matters of damage to the owner of the land
taken and of the adjacent land, for which he is entitled to a
just compensation. But if at the same time benefits accrue to
the particular parcel or tract of land by reason of the con-
struction of the road, then the amount of damage is less than
the same would be if no such benefits had accrued, and conse-
quently the compensation to which the owner would have
been entitled would, in that degree, be less than it would
have been in the absence of any benefits by reason of the
public work. In estimating the damage or loss on the one
hand and the benefits on the other accruing to the person
whose land is taken for public use, the Commissioners or
appraisers are not to go into conjectural or speculative esti-
mations of consequential damages or benefits. Their duty is
to ascertain what is a just compensation to the owner, and

when the land of which he is deprived is a part only of a
tract, such compensation may be ascertained by determining
the value of the whole tract without the improvement and
the portion remaining after the work is constructed. The
difference is the true compensation to which the party is enti-
tled. (Redfield on Railways, Sec. 71.) The damage or loss
on the one hand, and the benefits on the other, must be the
proximate consequence of the taking of the land for public
use, which is the taking and using it for some purpose; which
use is necessarily followed by consequences detrimental or
advantageous to the remaining adjacent land of him whose
property is taken. Whether the Commissioners in this case
proceeded in their assessment of damages and benefits upon
the principles above indicated or otherwise, we do not deem
it our duty to inquire, as the case must be reconsidered by the
Judge of the District Court, who, from the report of the Com-
missioners and the evidence upon which they acted, will be
able to determine.

The judgment must be reversed and the cause remanded for
further proceedings, and it is accordingly so ordered.

Mr. Justice Sᴀᴡʏᴇʀ expressed no opinion.